**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| RAFAEL OLMO,<br><br>*Plaintiff*,<br><br>v.<br><br>SHARLENE SNOWLING and JEFFREY CROTHERS,<br><br>*Defendants*. | Civil Action No. 26-7261<br><br>**OPINION**<br><br>November 17, 2026 |

**THIS MATTER** comes before the Court upon the Complaint of Plaintiff Rafael Olmo, a state prisoner proceeding *pro se*, under 42 U.S.C. § 1983, Title II of the Americans with Disabilities Act ("ADA"), § 504 of the Rehabilitation Act ("RA"), the New Jersey Civil Rights Act ("NJCRA"), and applicable state law. (ECF No. 1, "Complaint" or "Compl.") Plaintiff seeks declaratory relief and monetary damages. (*Id.*)

## I. BACKGROUND AND PROCEDURAL HISTORY

Plaintiff filed the instant Complaint on June 17, 2026. (*See id.*) The Court previously denied Plaintiff's application to proceed *in forma pauperis* and directed him to pay the $405 filing fee. (ECF No. 4.) Plaintiff paid that fee on October 27, 2026. The Court therefore proceeds to screen the Complaint pursuant to 28 U.S.C. § 1915A.

Plaintiff was incarcerated at New Jersey State Prison ("NJSP") when the events underlying this action occurred. (Compl. ¶ 4.) Defendant Jeffrey Crothers ("Crothers") was the administrator of NJSP, while Defendant Sharlene Snowling ("Snowling") was a correctional officer employed there. (*Id.* ¶¶ 5-6.) Plaintiff names both Defendants in their individual and official capacities.

(*Id.*)

Plaintiff alleges that he suffers from multiple sclerosis ("MS") and experiences symptoms that require him to use a wheelchair. (*Id.* ¶¶ 9-12.) He further alleges that, at all relevant times, Defendants knew of his serious medical condition and his need for wheelchair use. (*Id.* ¶¶ 13-16.)

On or about June 15, 2025, Plaintiff was scheduled for a contact visit with his family. (*Id.* ¶ 18.) Before the visit, Plaintiff informed his unit officer that he needed a wheelchair to travel to the visiting area. (*Id.* ¶ 19.) The officer arranged for an inmate wheelchair porter to transport Plaintiff to the north compound visiting hall. (*Id.* ¶¶ 20-22.) Upon arrival, however, Snowling allegedly informed Plaintiff that he was not permitted to use a wheelchair during the contact visit because doing so violated a prison rule. (*Id.* ¶¶ 23-24.) When Plaintiff attempted to explain that his MS symptoms necessitated wheelchair use, Snowling allegedly required him to choose between proceeding with the visit and continuing to use the wheelchair. (*Id.* ¶¶ 25-26.) Plaintiff alleges that he felt coerced into relinquishing the accommodation because he wanted to see his mother and sons on Father's Day. (*Id.* ¶¶ 27-28.)

According to Plaintiff, he was then transferred from his wheelchair into a plastic visiting-hall chair that could not adequately support his medical condition. (*Id.* ¶¶ 29-30.) Plaintiff alleges that he nearly fell out of the chair several times and experienced embarrassment during the visit. (*Id.* ¶¶ 31-32.) Plaintiff further alleges that ultimately, the plastic visiting-hall chair that he was sitting in tipped over, causing Plaintiff to fall onto the floor. (*Id.* ¶ 46.) Following the fall, Plaintiff was transported by wheelchair to medical, and the remainder of the visit was canceled. (*Id.* ¶ 47.) Plaintiff alleges that he suffered further embarrassment and serious injury to his neck and back as a result of the fall. (*Id.* ¶¶ 48-49.)

Plaintiff attributes the denial of his accommodation and the resulting risk of injury to

Defendants Snowling and Crothers. (*Id.* ¶ 69.) He alleges that Defendants knowingly and deliberately denied him necessary medical treatment and wheelchair accommodations, and that their conduct violated his constitutional and statutory rights. (*Id.* ¶¶ 70-89.)

Plaintiff seeks declaratory relief, compensatory damages, punitive damages, and such other relief as the Court deems appropriate. (*Id.* ¶¶ 91-93.)

## II. LEGAL STANDARD

Under the Prison Litigation Reform Act ("PLRA"), the Court must review a prisoner's complaint in a civil action seeking redress from a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must dismiss any portion of the Complaint that is frivolous, malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant immune from such relief. *Id.* § 1915A(b). Section 1915A applies whether or not a prisoner has been granted leave to proceed *in forma pauperis*. Accordingly, Plaintiff's payment of the filing fee does not relieve the Court of its screening obligation.

At this screening stage, the Court accepts the factual allegations of the Complaint as true and draws all reasonable inferences in Plaintiff's favor. *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008). A complaint must contain sufficient factual matter to state a claim that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A *pro se* complaint is held to less stringent standards than a complaint drafted by an attorney and is liberally construed. *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972).

## III. DISCUSSION

### a. Claims Under 42 U.S.C. § 1983

Section 1983 provides a remedy against a person who, acting under color of state law, deprives another of rights secured by the Constitution or federal law. 42 U.S.C. § 1983. To state

a claim, a plaintiff must allege the personal involvement of each defendant in the alleged constitutional violation. *See Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988).

**1. Eighth Amendment**

To state an Eighth Amendment claim based on inadequate medical care, a prisoner must allege a serious medical need and acts or omissions by prison officials indicating deliberate indifference to that need. *Pearson v. Prison Health Serv.*, 850 F.3d 526, 534 (3d Cir. 2017). Deliberate indifference may be found where a prison official knows of a prisoner's need for medical treatment but intentionally refuses to provide it, delays necessary medical treatment for non-medical reasons, or prevents a prisoner from receiving needed medical treatment. *Id.*; *Estelle v. Gamble*, 429 U.S. 97, 104-05 (1976). A medical need is sufficiently serious if a physician has diagnosed it as requiring treatment or if it is so obvious that a layperson would recognize the necessity for medical attention. *Monmouth Cnty. Corr. Inst. Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d Cir. 1987).

Here, Plaintiff alleges that he suffers from MS, experiences symptoms that necessitate wheelchair use, and informed prison staff of that need. (Compl. ¶¶ 9-14.) He further alleges that Defendant Snowling knew of his condition but nevertheless required him to choose between using his wheelchair and attending a family visit. (*Id.* ¶ 26.) Plaintiff alleges that the alternative chair could not adequately support him and that he nearly fell from it several times. (*Id.* ¶¶ 30-31.)

Liberally construed, these allegations permit an inference that Defendant Snowling knowingly disregarded a substantial risk to Plaintiff's health and safety. The Court cannot conclude at this preliminary stage that Plaintiff's allegations establish only negligence or a mere disagreement over medical treatment. Whether the evidence ultimately supports a finding of deliberate indifference is a question for a later stage of the proceedings. Accordingly, Plaintiff's

Eighth Amendment claim against Defendant Snowling in her individual capacity may **PROCEED.**

The allegations against Defendant Crothers are different. Although Plaintiff identifies Defendant Crothers as the prison administrator and alleges generally that he and Defendant Snowling conspired to deny the wheelchair accommodation, the Complaint does not sufficiently identify facts showing that Defendant Crothers personally participated in the challenged decision, directed Snowling's conduct, or knowingly acquiesced in a constitutional violation. (*See generally id.*) Supervisory status alone does not establish liability under § 1983. *See Rode*, 845 F.2d at 1207. The individual-capacity Eighth Amendment claim against Defendant Crothers is therefore **DISMISSED** without prejudice. Plaintiff may seek leave to amend if he can allege facts establishing Defendant Crothers's personal involvement.

**2. Fourteenth Amendment**

Plaintiff also invokes the Fourteenth Amendment. (Compl. ¶¶ 69-90.) To the extent he seeks to assert a separate substantive due process claim based on the same conduct underlying his Eighth Amendment claim, the Eighth Amendment supplies the more specific constitutional protection applicable to the alleged treatment of a convicted prisoner. *See Porter v. Pennsylvania Department of Corrections*, 974 F.3d 431, 447–48 (3d Cir. 2020). To the extent Plaintiff intends to assert a distinct equal protection claim, the Complaint does not adequately allege facts showing that Defendants intentionally treated him differently from similarly situated persons because of his disability or another protected classification. *See Mack v. Warden Loretto FCI*, 839 F.3d 286, 305 (3d Cir. 2016). Any separate Fourteenth Amendment equal protection claim brought against both Defendant Snowling and Defendant Crothers is therefore **DISMISSED** without prejudice.

**b. Title II of the ADA**

Title II of the ADA provides that "no qualified individual with a disability shall, by reason of that disability, be excluded from participation in or denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by such an entity." 42 U.S.C. § 12132. To state a claim under Title II of the ADA, a plaintiff must allege that he is a qualified individual with a disability, that he was excluded from participation in or denied the benefits of a public entity's services, programs, or activities, or otherwise subjected to discrimination by the public entity, and that the exclusion, denial, or discrimination occurred by reason of his disability. *See Montanez v. Price*, 154 F.4th 127, 146 (3d Cir. 2025). The ADA applies to state prisons and their programs and services. *Pennsylvania Dep't of Corr. v. Yeskey*, 524 U.S. 206, 210-13 (1998). The Third Circuit has recognized that prisons must provide reasonable accommodations to qualified individuals with disabilities in their programs, services, and activities. *Furgess v. Pennsylvania Dep't of Corr.*, 933 F.3d 285, 287 (3d Cir. 2019).

Plaintiff alleges that his MS substantially limits his mobility, that he required a wheelchair to participate safely in a family contact visit, and that Defendant Snowling denied him its use because of a purported prison rule. (Compl. ¶¶ 9-12, 19, 24-27.) He further alleges that the denial forced him to choose between a necessary accommodation and an important family visit. (*Id.* ¶¶ 26-27.) These allegations plausibly suggest that Plaintiff is a qualified individual with a disability and that he was denied meaningful access to a prison program or service because of his disability. At this stage, the Court cannot determine whether the restriction was justified, whether an accommodation was unreasonable, or whether Defendants had a legitimate basis for the challenged policy. The ADA claim may therefore **PROCEED** against both Defendants in their official capacities, to the extent the claims are construed as claims against the relevant public entity. The

Court notes, however, that such claims are not individual-capacity claims against the officers themselves. *See Emerson v. Thiel College*, 296 F.3d 184, 189 (3d Cir. 2002). Accordingly, the individual-capacity ADA claims are **DISMISSED** with prejudice as to both Defendants because Title II does not provide for individual-capacity liability.

**c. Section 504 of the Rehabilitation Act**

Section 504 of the RA provides that "[n]o otherwise qualified individual with a disability . . . shall, solely by reason of [that] disability, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under a program or activity receiving [f]ederal financial assistance …." 29 U.S.C. § 794(a). The substantive standards governing claims under Title II of the ADA and § 504 of the RA are generally identical, except that the RA requires disability to be the sole cause of the challenged discrimination, while the ADA requires but-for causation. *Montanez*, 154 F.4th at 146; *Durham v. Kelley*, 82 F.4th 217, 226 (3d Cir. 2023).

Plaintiff's allegations concerning his MS, the asserted need for a wheelchair, and the denial of its use during a contact visit, (Compl. ¶¶ 9-12, 19, 24-27), are sufficient at screening to permit a potential claim under the RA. The Complaint, however, does not independently establish whether the relevant prison program or activity received federal financial assistance. (*See generally id.*) That issue may be addressed on a more developed record. Thus, the RA claim may **PROCEED** against Defendants in their official capacities, subject to proof of the statute's requirements. The individual-capacity RA claims against Defendants are **DISMISSED** with prejudice because § 504 does not provide for individual-capacity liability. *See Emerson*, 296 F.3d at 190.

**d. New Jersey Civil Rights Act**

The NJCRA provides a cause of action against a person who, acting under color of law,

subjects or causes another to be subjected to a deprivation of rights secured by the Constitution or laws of the United States or New Jersey. N.J. Stat. Ann. §§ 10:6-1—10:6-2.

Courts generally interpret the NJCRA consistently with § 1983. *See Trafton v. City of Woodbury*, 799 F. Supp. 2d 417, 443–44 (D.N.J. 2011). As such, for the reasons discussed above, Plaintiff's allegations that Defendant Snowling knowingly denied him a wheelchair accommodation despite awareness of his medical condition and the risks associated with the alternative chair, (Compl. ¶¶ 23-26), are sufficient to permit an NJCRA claim against her in her individual capacity to **PROCEED**. However, the Complaint does not sufficiently allege Defendant Crothers's personal involvement in the challenged conduct. (*See id.*) The NJCRA claim against Defendant Crothers in his individual capacity is therefore **DISMISSED** without prejudice.

To the extent Plaintiff asserts NJCRA claims against Defendants in their official capacities for monetary damages, those claims are barred because such claims are treated as claims against the State, which is not a "person" subject to suit under the NJCRA. *See Didiano v. Balicki*, 448 F. App'x 634, 637-39 (3d Cir. 2011); *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989). Any official-capacity claim for prospective relief must independently satisfy the requirements for such relief. *See Will*, 491 U.S. at 71 n.10; *Ex parte Young*, 209 U.S. 123, 159-60 (1908). Accordingly, any official-capacity claim under the NJCRA is **DISMISSED** to the extent it seeks monetary damages, and any claim for prospective relief may **PROCEED** only if Plaintiff adequately alleges an ongoing violation and seeks relief that would remedy that violation.

**e. State-Law Tort Claims**

Plaintiff also invokes applicable state law and seeks damages for the alleged injuries, pain, and suffering resulting from the incident. (Compl. ¶¶ 69-90.) Liberally construed, the Complaint

may be understood to assert state-law tort claims arising from the denial of wheelchair use and the alleged risk of physical injury. (*See id.*) However, the Complaint does not provide sufficient information to determine whether Plaintiff satisfied any applicable notice requirements under the New Jersey Tort Claims Act, N.J. Stat. Ann. §§ 59:1-1 to 12-3, or whether any particular state-law cause of action is otherwise barred. (*See id.*) The Court therefore does not determine the ultimate viability of those claims at this stage. To the extent Plaintiff asserts state-law tort claims against Defendants, those claims may **PROCEED** only insofar as they are adequately pleaded and not barred by applicable statutory or common-law defenses. Defendants may raise any appropriate defenses in a responsive pleading or motion.

**f. Leave to Amend**

When a complaint is dismissed for failure to state a claim, a *pro se* plaintiff ordinarily should be afforded an opportunity to amend unless amendment would be inequitable or futile. *See Grayson v. Mayview State Hospital*, 293 F.3d 103, 108 (3d Cir. 2002).

As discussed above, Plaintiff's individual-capacity claims under the ADA and RA fail as a matter of law and are dismissed with prejudice. The remaining dismissed claims, however, are dismissed without prejudice where additional factual allegations could potentially cure the deficiencies identified above. Plaintiff may seek leave to amend in accordance with the Federal Rules of Civil Procedure and the Court's Local Civil Rules. Any proposed amendment should identify each Defendant's personal involvement, distinguish the capacities in which each Defendant is sued, and state the facts supporting each claim.

## IV. CONCLUSION

For the reasons stated above, the Complaint may **PROCEED** on Plaintiff's Eighth Amendment claim against Defendant Snowling in her individual capacity, his disability-

discrimination claims under Title II of the ADA and § 504 of the RA against Defendants in their official capacities, and his New Jersey Civil Rights Act claim against Defendant Snowling in her individual capacity. Any adequately pleaded state-law tort claims are not dismissed at this stage, subject to applicable defenses. The individual-capacity claims under the ADA and RA are **DISMISSED** with prejudice as to both Defendants. The individual-capacity claims brought pursuant to 42 U.S.C. § 1983 and the New Jersey Civil Rights Act against Defendant Crothers are **DISMISSED** without prejudice. Plaintiff's separate Fourteenth Amendment equal protection claim is **DISMISSED** without prejudice. An appropriate Order follows.

*/s/ Jamel K. Semper*
**HON. JAMEL K. SEMPER**
**United States District Judge**